IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED-ED4
02 JUN -4 PM 2: 51
CLERK
U.S. DISTRICT COURT

DOCKETED
JUN 0 4 2002

| | |
|---|---|
| RICHEY A. HARE, SR. ) | |
| ) | |
| Plaintiff, ) | Case No. 02C 3973 |
| ) | |
| v. ) | |
| ) | |
| JOHN ZITEK, individually and in his ) | JUDGE COAR |
| official capacity as Chief of Police of the ) | |
| Stickney Police Department, the ) | |
| VILLAGE OF STICKNEY POLICE ) | MAGISTRATE JUDGE BOBRICK |
| DEPARTMENT, the VILLAGE OF ) | |
| STICKNEY, a municipal corporation, ) | |
| Cook County Sheriff's Department ) | |
| Investigators SEAN GLEASON, ) | |
| individually and in his official capacity, ) | |
| DONNA MALLOW, individually and in ) | |
| her official capacity and RICHARD ) | |
| WILLIAMS, individually and his ) | |
| official capacity. ) | |
| Defendants. | |

### COMPLAINT

NOW COMES the Plaintiff, RICHEY A. HARE, SR., by and through his attorneys, Richard J. Reimer and Thomas S. Radja, of SKLODOWSKI, PUCHALSKI & REIMER, complaining against the Defendants as follows:

### JURISDICTION AND VENUE

1) This action arises under the United States Constitution particularly under the provisions of the First and Fourteenth Amendment to the Constitution of the United States, and under 42 U.S.C. §1983 and §1988.

2) This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1331 and §1343.

3) The acts complained of herein all occurred within Cook County, Illinois. Venue is proper under 28 U.S.C. §1391 (b).

4) The supplemental jurisdiction of this Court is invoked for the prosecution of the State Law claim.

5) Plaintiff demands trial by jury for all issues which a jury trial is available.

## PARTIES

6) Plaintiff, RICHEY A. HARE, Sr. ("HARE") is a citizen of the United States of America and a resident of Cook County, Illinois. At all relevant times hereto HARE, was employed as a sworn police officer for the Stickney Police Department holding the rank of Lieutenant of Police.

7) Defendant JOHN ZITEK ("Zitek") at all relevant times hereto, was the duly appointed Police Chief of the Village of Stickney Police Department. Zitek is sued individually and in his official capacity as Police Chief.

8) Defendant Village of Stickney is a municipal corporation and body politic organized and existing under the Constitutional laws of the State of Illinois. Pursuant to and in furtherance of its State Constitutional and Statutory powers and authorities, the Village of Stickney maintained the Stickney Police Department as an agency of local government charged inter alia with the maintenance of public order and maintenance of public safety.

2

9) Defendants SEAN GLEASON, DONNA MALLOW and RICHARD WILLIAMS are on information and belief, residents of Cook County, Illinois. At all relevant times hereto Defendants Gleason, Mallow and Williams were employed as sworn police officers by the Cook County Sheriff's Department. Defendants are served individually and in their official capacity.

## FACTS

10) In May of 1999 HARE was serving as a Lieutenant of Police of the Stickney Police Department assigned to the Investigations Division of the Police Department.

11) Following the death of the Commander of Police, Zitek assigned HARE to perform certain functions previously performed by the deceased Commander. Specifically HARE was assigned to the job duties and functions of evidence custodian.

12) Upon being assigned the duties and responsibilities of evidence custodian, HARE performed a preliminary audit. The results of the preliminary audit disclosed that narcotics, money and drugs were missing or unaccounted for.

13) HARE immediately notified Zitek, the Chief of Police and his immediate supervisor as to the fact that the preliminary audit disclosed missing or unaccounted for narcotics, money and drugs. HARE requested that Zitek authorize an outside law enforcement agency to conduct an independent evidence room audit. Zitek refused an outside audit and told HARE, "The Commander" was responsible for it and it will lie with the dead man."

14) HARE then performed a final audit which confirmed the results of the preliminary audit and the fact that certain evidence or recovered property was missing or unaccounted for, including money, narcotics and guns.

15) HARE immediately notified Zitek of the results of the final audit who ordered HARE to "let it go." Zitek told HARE "not to make an issue out of it," that "that's where it lies, with the dead man."

16) In October of 1999, Zitek promoted HARE to the position of Commander. HARE's duties besides being evidence custodian included, but were not limited to, conducting criminal investigations, and scheduling and coordinating Stickney Police Officers' off duty security details.

17) In that capacity and under the order of Zitek, HARE was sent to Chicago Motor Speedway and Hawthorne Race Track to collect payment from the services performed by off-duty Stickney Police Officers for security, traffic control and parking enforcement. In one instance HARE received a check in the amount of approximately $4000 payable to the Village of Stickney.

18) HARE delivered this check to Zitek who endorsed the check and instructed HARE to go the Village Treasurer, Dora Madsen, and have the check cashed. When the Treasurer did not have sufficient funds to cash the check, Zitek told HARE to go to Cicero State Bank, and see a "friend" of Zitek's who would cash the check. HARE went to Cicero State Bank spoke to Zitek's "friend," who cashed the check and gave the currency to HARE.

4

19) HARE delivered the currency to Zitek in an envelope. Zitek put currency in envelopes containing police officers' names that had worked the off-duty security details. When Zitek was done, Zitek offered HARE a "bonus" from the currency left over.

20) The event occurred on at least one other occasion, and each time HARE refused to accept any currency from Zitek. HARE found it unusual that Zitek would offer him money in that manner.

21) On or about July 17, 2000, HARE learned that a Police Department civilian radio dispatcher had been forging his signature via computer to obtain unauthorized criminal history information from the Police Department L.E.A.D.S./N.C.I.C. system. HARE reported this to Zitek who refused to terminate the dispatcher. Zitek and HARE got into an argument over this dispatcher. HARE stated that he would arrest the dispatcher for her conduct, and Zitek told HARE that he would have to arrest him first. Zitek ended the argument by telling HARE he would go to "the Mayor."

22) On that same date, HARE was ordered to report to Zitek's office. When he arrived at Zitek's office, present were Zitek, Stickney Village President Donald Tabor and Stickney Village Trustee James Dolezal. HARE informed Tabor and Dolezal about the illegal and criminal use of L.E.A.D.S./N.C.I.C. system by the dispatcher, about the missing or unaccounted for money, narcotics and property from the evidence room and that HARE believed that there was other corruption within the Police Department including but not limited to money being stolen from

parking ticket fines, prostitution sting arrests, cannabis ordinance fines and fingerprint money from IRS applicants.

23) Shortly after this meeting Zitek disbanded the Detective Division and reassigned HARE to the Patrol Division on a rotating shift basis working different day off groups.

24) On or about August 16, 2000, HARE and other Stickney Police Officers went to the Cook County State's Attorney's Office, Special Prosecutions Public Integrity Unit and reported what they believed to be corruption in the Stickney Police Department and Village of Stickney. The Cook County State's Attorney's office began a grand jury investigation into those allegations. HARE and other Stickney Police Officers began cooperating with the State's Attorney's office and assisted in the investigation.

25) Assistant State's Attorney Karen Stratton, assigned to the case, issued a number of grand jury subpoenas to Stickney Police Officers including HARE.

26) On or about October 27, 2000 HARE received a grand jury subpoena compelling HARE's testimony before a Cook County Grand Jury on October 30, 2000. HARE learned that the Village had retained its law firm to represent other Stickney Police Officers that received grand jury subpoenas except for HARE.

27) On October 30, 2000 HARE testified before the Grand Jury as to his knowledge of what he believed to be corruption in the Stickney Police Department and the Defendants were aware of HARE's appearance before the Grand Jury.

6

28) On December 6, 2000, HARE was serving as Patrol Division Shift Commander when a female resident of Stickney reported to the Stickney Police Department that she had been the victim of an attempted abduction/attempted sexual assault. As Shift Commander, HARE immediately began conducting a criminal investigation, including the assignment of other Stickney Police Officers to investigate the crime in an attempt to identify and apprehend the offender.

29) Zitek, upon learning of the crime and investigation being conducted by HARE, ordered HARE to cease the investigation. Zitek stated that the victim's brothers had both been in the penitentiary and had some drug and legal problems and that the family didn't "warrant that type of investigation." The crime was never properly investigated and the offender was never apprehended.

30) On April 12, 2001, the female victim of the attempted abduction came to the Stickney Police Department and spoke to HARE. The female victim advised HARE that she had been contacted by Zitek who had offered to provide her and her two children with presents in exchange for filing a sexual assault complaint against HARE. The female victim further advised that three Cook County Sheriff's Officers had been harassing both her and the victim's mother at her house and place of employment.

31) The following week, Defendants, Cook County Sheriff's Police Officers Gleason, Mallon and Williams came to the Stickney Police Department and began interviewing Stickney Police Officers in an attempt to obtain evidence against HARE, for allegedly sexually assaulting the female victim.

32) HARE later took the female victim to the State's Attorney's office and her testimony was presented to the Grand Jury.

33) On May 17, 2001 while on duty at the Stickney Police Department, HARE, Defendants Gleason, Mallon and Williams came to the Police Department to interview all Stickney Police Officers assigned to HARE'S shift. The Defendants refused to inform HARE as to the nature of their attempted investigation, nor did they question him regarding these allegations.

34) As a result of the acts of the Defendants, HARE has been unable to continue his regular employment with the Stickney Police Department, and as a result, on September 17, 2001 HARE was awarded a line of duty disability pension by the Stickney Police Pension Board, on the basis of a psychological disability.

## COUNT I.

### FIRST AMENDMENT VIOLATIONS
### PURSUANT TO 42 U.S.C. §1983

35) Plaintiff realleges and asserts the allegations contained in paragraphs (1) through (34) set forth above, as paragraph (1) through (34) of Count I of his Complaint.

36) HARE's statements to Mayor Tabor and Trustee Dolezal concerning alleged corruption in the Stickney Police Department and the Village of Stickney were matters of public concern.

8

37) HARE's testimony to the Cook County Grand Jury concerning alleged corruption in the Stickney Police Department and the Village of Stickney were matters of public concern.

38) HARE is a victim of retaliation by the Defendants for his speaking out to Village Officials and the Cook County Grand Jury concerning alleged corruption in the Stickney Police Department and Village of Stickney, for speaking out as to these matters of public concern.

39) As a direct result of HARE's speaking out regarding matters of public concern, the Defendants engaged in a campaign of harassment, intimidation and retaliation directed at HARE and his supporters.

40) The custom practice and policy of the Defendant Village of Stickney is to retaliate against any employees who report supposed corruption. The acts of retaliation, include but not limited to the following:

    A) Demoting HARE from his position as Chief of Detectives.

    B) Assigning HARE to unstable rotating hours of work and days off.

    C) Initiating false and baseless charges and allegations against HARE and causing the Cook County Sheriff's Department to investigate these false and baseless charges.

    D) Harassing and intimidating civilians in an attempt to have these civilians file false criminal complaints against HARE.

9

E) Falsely alleging that evidence under HARE's custody and control was missing.

F) Failing to provide HARE with legal representation prior to his grand jury testimony while providing all other Stickney Police Officers with representation.

G) Attempting to intervene in HARE's disability hearing proceeding in an attempt to preclude the Stickney Police Pension Board from according HARE disability pension benefits.

H) Retaliating against members of the Stickney Police Pension Board who voted to award HARE a line of duty disability pension by abruptly terminating the son of one of the Pension Board members.

I) Termination of long time members of the Stickney Police Department who supported HARE for no reason.

J) Interfering with the operations of the Stickney Police Pension Fund in attempt to reverse the decision of the Pension Board awarding HARE a line of duty disability pension.

41) The false, malicious and retaliatory acts of the Defendants have resulted in extreme humiliation and embarrassment to HARE and have diminished his reputation in the community.

42) The acts of the Defendants have resulted in the denial or loss of salary and other benefits, other economic damages and severe emotional pain, suffering and distress.

Wherefore, Plaintiff requests that judgment be entered against all of the Defendants, jointly and severably, for compensatory damages in a fair and reasonable amount, for punitive damages, for interest on Plaintiff's compensatory damages, at a rate set by law, for Plaintiff's costs; including Attorney's fees and for such other and further relief as the Court deems just and proper.

## COUNT II.

### CONSPIRACY TO VIOLATE 42 U.S.E. §1983

43) Plaintiff realleges and reasserts the allegations continued in paragraphs (1) through (42) of Count I of his Complaint as paragraphs (1) through (42) of his Complaint.

44) The Defendants knew that the allegations against HARE alleging any claimed sexual assault were false. With that knowledge, Defendant's nevertheless knowingly and voluntarily agreed to continue to investigate HARE. Defendants did so knowingly and voluntarily, having agreed or reached a mutual understanding with Zitek, Tabor and or Gleason, Mallon and Williams to commit acts in an effort to support the false allegations against HARE, as part of a pattern of retaliation against HARE for his speaking out on matters of public concern and cooperating with the Cook County State's Attorney's Office and HARE'S testimony before the Cook County Grand Jury.

coconspirators, to violate HARE'S rights guaranteed to HARE under the First Amendment. As a result of that Complaint, HARE has sustained injuries.

Wherefore, Plaintiff requests that judgment be entered against all of the Defendants, jointly and severably, for compensatory damages in a fair and reasonable amount, for punitive damages, for interest on Plaintiff's compensatory damages, at a rate set by law, for Plaintiff's costs; including Attorney's fees and for such other and further relief as the Court deems just and proper.

                        Respectfully Submitted,
                        SKLODOWSKI, PUCHALSKI & REIMER

By: _____
                        Richard J. Reimer
                        One of the Attorneys for Plaintiff

Richard J. Reimer
Sklodowski, Puchalski & Reimer
111 West Washington, Suite 1000
Chicago, Illinois 60602
(312) 332-4428

JS 44
(Rev. 11/95)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Richey A. Hare

## DEFENDANTS
Village of Stickney, et al.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Richard J. Reimer
111 W. Washington St. Suite 1000
Chicago, IL 60602

02C 3973
JUDGE COAR
JUN 04 2002
MAGISTRATE JUDGE BOBRICK

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth In Lending | ☐ 690 Other | **LABOR** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 U.S.C. 1983; 42 U.S.C. 1988

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 6-4-02

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**
Eastern Division

DOCKETED
JUN 0 4 2002

In the Matter of

RICHEY A. HARE, SR.,
   Plaintiff,
v.
VILLAGE OF STICKNEY et al.

Case Number: 02C 3973

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff Richey A. Hare, Sr.

JUDGE COAR

MAGISTRATE JUDGE BOBRICK

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME<br>Richard J. Reimer | NAME<br>Thomas S. Radja Jr. |
| FIRM<br>Sklodowski, Puchalski, & Reimer | FIRM<br>Sklodowski, Puchalski, & Reimer |
| STREET ADDRESS<br>111 W. Washington St., Suite 1000 | STREET ADDRESS<br>111 W. Washington St., Suite 1000 |
| CITY/STATE/ZIP<br>Chicago, IL 60602 | CITY/STATE/ZIP<br>Chicago, IL 60602 |
| TELEPHONE NUMBER<br>(312) 332-4428 | TELEPHONE NUMBER<br>(312) 332-4428 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)<br>619572 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)<br>6270464 |
| MEMBER OF TRIAL BAR? YES ✓ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ✓ |
| TRIAL ATTORNEY? YES ✓ NO ☐ | TRIAL ATTORNEY? YES ✓ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ✓ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

FILED-ED4
02 JUN -4 PM 2:50
U.S. DISTRICT COURT CLERK