IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHEY A. HARE, SR.                   )
                                      )
          Plaintiff,                  )    No. 02 C 3973
                                      )
     vs.                              )
                                      )
JOHN ZITEK, individually and in his)
official capacity as Chief of         )    Magistrate Judge
Police of the Stickney Police         )    Arlander Keys
Department, DONALD TABOR,             )
individually and in his official      )
capacity as President of the          )
Village of Stickney, and THE          )
VILLAGE OF STICKNEY, a municipal      )
corporation,                          )
                                      )
          Defendants.                 )

## MEMORANDUM OPINION AND ORDER

Richey Hare joined the Stickney Police Department in 1986.
In 2002, he sued the department, as well as the Village of
Stickney, Stickney's Chief of Police (John Zitek), and Stickney's
Mayor (Donald Tabor), alleging that these defendants retaliated
against him because he uncovered and exposed corruption within
the Police Department and within the Village. Specifically, he
claims that the defendants harassed and intimidated him, going so
far as to attempt to trump up a sexual assault case against him,
all in violation of 42 U.S.C. §1983, and in furtherance of a
conspiracy to violate 42 U.S.C. §1983. The case is set for trial
on August 7, 2006. The purpose of this Memorandum Opinion and
Order is to resolve, to the extent possible at this juncture, the

parties' motions *in limine*.

## Discussion

Generally speaking, district courts have the power to exclude evidence *in limine* as part of their inherent authority to manage trials. *See Pease v. Production Workers of Chicago and Vicinity Local 707*, No. 02 C 6756, 2003 WL 22012678, at *3 (N.D. Ill. Aug. 25, 2003)(citing *Farley v. Miller Fluid Power Corp.*, No. 94 C 2273, 1997 WL 757863, at *1 (N.D. Ill. Nov. 24, 1997); *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). But motions *in limine* should be granted only if the evidence is clearly not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.,* 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). If there is any question on the issue, rather than barring the evidence before trial, the Court should reserve ruling on questions of admissibility until they actually arise, in the context of the trial. *See, e.g., Scarboro v. Travelers Ins. Co.,* 91 F.R.D. 21, 22 (E.D. Tenn. 1980); *Hawthorne Partners*, 831 F.Supp. at 1401.

Here, each side has filed multiple motions *in limine*. The Court considers each below.

A.   Mr. Hare's Motions *In Limine*

Mr. Hare has filed seven motions *in limine*. He first asks the Court to bar the defendants from arguing that any damages awarded should be reduced because of the disability pension

2

benefits he has received or will receive in the future. Mr. Hare argues that the "collateral source rule" should apply to restrict the defendants from reducing any damages because it was the defendants' actions that rendered Mr. Hare psychologically disabled and benefit eligible in the first place. The defendants argue that the collateral source rule does not apply here, because the Stickney Police Pension Board is not a collateral source, but merely a pension administrator for the Stickney Police Department. The defendants also argue that, even if the collateral source rule did apply, the Court can and should exercise its discretion to allow the jury to hear evidence regarding Mr. Hare's pension benefits so that the jury will have an accurate picture of Mr. Hare's financial situation and to prevent any damages award from including "double recovery."

"The purpose of the collateral source rule is 'not to prevent the plaintiff from being overcompensated but rather to prevent the tortfeasor from paying twice.'" *Flowers v. Komatsu Mining Systems, Inc.*, 165 F.3d 554, 558 (7th Cir. 1999)(quoting *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986)). "[A] tortfeasor is not permitted to credit compensation that his victim receives from another ("collateral") source as a consequence of the tort." *Halek v. United States*, 178 F.3d 481, 483 (7th Cir. 1999) (citing *Wilson v. Hoffman Group, Inc.*, 131 Ill.2d 308, 137 Ill.Dec. 579, 546 N.E.2d 524, 530 (1989).

Although the defendants may be right that the Pension Board is the same source, i.e., not a collateral source, as the Stickney Police Department, the Police Department will not be on the hook for damages here; indeed, Mr. Hare has voluntarily dismissed the Village of Stickney Police Department as a named defendant. And the defendants that potentially *will* be on the hook for damages – namely, the Mayor, the Chief and the Village – are separate and distinct entities from the Pension Board.[1] Moreover, given the purpose behind the collateral source rule, the Court finds that an offset is inappropriate, as it would gut any deterrent effect potentially derived from an award. *See also United States Can Company v. National Labor Relations Board*, 254 F.3d 626, 631-35 (7th Cir. 2001)(generally discussing the policy behind the collateral source doctrine). Accordingly, the Court grants Mr. Hare's first motion *in limine*; the defendants may not seek a reduction in any award based upon the disability pension benefits paid.

Next, Mr. Hare moves *in limine* to bar the defendants from presenting evidence of his disability, including evidence on the cause of his disability. Mr. Hare argues that the defendants are collaterally estopped from arguing that his disability was not

---

[1]The defendants concede in one of their motions *in limine* that the Stickney Police Pension Board is a different entity from the Village. *See* Defendants' Motion *in Limine* to Bar Evidence and Testimony of Tom Kadolph and Carroll Kadolph, ¶3.

4

caused by Chief Zitek's conduct.    Given the procedural history
of the pension matter, Mr. Hare cannot win on this argument.
Collateral estoppel – now more commonly called issue preclusion –
bars a party from relitigating the same issue that was necessary
to a prior final judgment; a party seeking to invoke the doctrine
must show that (1) the issue sought to be precluded was the same
as that involved in the prior action; (2) the issue was actually
litigated; (3) the determination of the issue was essential to
the final judgment; and (4) the party against whom estoppel is
invoked was fully represented in the prior action.    E.g.,
*Washington Group International, Inc. v. Bell, Boyd & Lloyd LLC,*
383 F.3d 633, 636 (7th Cir. 2004).    Although it is true that the
Village was fully represented in the proceedings dealing with the
intervention question – the question of whether the Village
should be allowed to intervene in Mr. Hare's pension board
hearing – the issue about what caused Mr. Hare's disability was
not resolved there; nor was it essential to that action.    And
while the question may have been addressed during the pension
board proceedings, the Village was excluded from those
proceedings; indeed, Mr. Hare joined the pension board in barring
the Village from participating in those proceedings.    The
question of whether Mr. Hare's injuries, if any, were caused by
the alleged harassment and retaliation is still open in this
forum, and Mr. Hare's second motion *in limine* is denied.

In his third motion *in limine*, Mr. Hare argues that this Court has already ruled that his "speech" was constitutionally protected under the *Connick-Pickering* test, and he moves *in limine* to bar the defendants from arguing otherwise. In response, the defendants argue that two recent decisions – the United States Supreme Court's decision in *Garcetti v. Cebellos*, 126 S.Ct. 1951 (2006), and the Seventh Circuit's decision in *Mills v. City of Evansville, Indiana*, No. 05-3207, – F.3d –, 2006 WL 1679408 (7th Cir. June 20, 2006), change the landscape with regard to how §1983 First Amendment speech cases are decided.

Mr. Hare is correct that the Court has already determined, as a matter of law, that his speech was constitutionally protected. *See Hare v. Zitek*, 414 F.Supp.2d 834, 854-58 (N.D. Ill. 2005). In *Garcetti*, which was decided just two months ago, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 126 S.Ct. at 1960. In *Mills*, which was decided just one month ago, the Seventh Circuit applied *Garcetti* to hold that a police officer who, while on duty and in uniform, discussed with her superiors her opinion about the upcoming implementation of an official policy, spoke as part of her job, which meant, under *Garcetti*, that she could not prove a

constitutional violation. 2006 WL at *2. In its summary judgment ruling, the Court determined that Mr. Hare spoke, not as an employee of the police department, but as a citizen. 414 F.Supp. at 855-56. *Garcetti* and *Mills* do nothing to change that. Unlike the plaintiffs in those cases, Mr. Hare did not "speak" as part of his professional responsibilities; he wasn't simply doing his job.

The defendants apparently argue that, because he was working so closely with the State's Attorney's Office – and, in particular, with Karyn Stratton of the Office's Public Integrity Unit – he "spoke" as an employee of that office and in furtherance of the job he was "hired" to do. Although inventive, this argument is absurd. There is simply no evidence that Mr. Hare was an employee of the State's Attorney's Office, and the recent cases cannot be read to allow the inference that an employment relationship is created by a few emails. Mr. Hare's third motion *in limine* is granted.

Mr. Hare next moves *in limine* to bar the defendants from raising the defense of qualified immunity with respect to John Zitek. In ruling on the defendants' motion to dismiss, Judge Bobrick rejected the argument that the law was unclear as to whether speech such as Mr. Hare's would be protected. *See Hare v. Zitek*, Memorandum Order dated January 17, 2002, p. 9. And this Court reiterated as much in its summary judgment ruling. No

matter how much the defendants press the point, the Court is not persuaded that *Garcetti* changes anything about the constitutional standards at play in these circumstances. Moreover, even if *Garcetti* did change the legal landscape, it wasn't decided until May 30, 2006, and the defendants have not explained how it could be used to excuse conduct that happened years earlier, when the constitutional standards were clearly established. Mr. Hare's fourth motion *in limine* is granted.

Fifth, Mr. Hare moves *in limine* to prohibit the defendants from asking certain questions of Susan Locander, a reporter for Life Newspaper who wrote several articles about Mr. Hare, the defendants, and the events at issue in this lawsuit. In particular, Mr. Hare argues that, because of "the reporters' privilege," the defendants should be prohibited from asking Ms. Locander to reveal the identities of her sources for those articles. But, as the defendants correctly point out, the Seventh Circuit has declined to recognize a federal "reporters' privilege." *See McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003). Having said this, the Court is mindful that there are necessarily concerns about forcing a reporter to disclose her sources; it is not something the Court would do lightly. The Court will require Ms. Locander to answer sensitive questions – including questions about her sources – only if the defendants can establish, via proffer at trial, that they have a real need

for the information and that the information is not available from another source. And, frankly, given that the defendants apparently just dropped the matter when Ms. Locander invoked privilege at her deposition, the Court questions whether they will be able to do so. For now, Mr. Hare's fifth motion *in limine* is denied.

Next, Mr. Hare moves *in limine* to bar the defendants from referring to any psychiatric condition suffered by Mr. Hare prior to the events alleged in this lawsuit. The defendants oppose the motion, arguing that they should be entitled to elicit and introduce evidence about when Mr. Hare began experiencing the panic attacks he says were triggered by the events alleged in his complaint. At this point, it is unclear whether the "psychiatric condition" evidence involves something more than the panic attacks Mr. Hare discussed at his deposition. But certainly with regard to these attacks, the defendants are entitled to explore the question of when, exactly, Mr. Hare began suffering the attacks – if he experienced the attacks before any of the alleged events occurred, then that would be probative evidence that Chief Zitek's conduct did not cause them. Although evidence of this nature is surely unfavorable to Mr. Hare, the Court is not persuaded that the prejudicial nature substantially outweighs its probative value, which is the test under Rule 403. Accordingly, the Court will allow evidence relating to the panic attacks, when

they started, etc. To the extent this motion covers evidence
beyond the panic attacks, the Court will address the issue when
and if it arises. For now, Mr. Hare's sixth motion *in limine* is
denied.

Finally, Mr. Hare moves *in limine* to bar the defendants from
introducing any evidence, or from arguing that he improperly or
inadequately supervised the Stickney Police Department's evidence
room. Here, Mr. Hare is referring to certain allegations by
Chief Zitek that Mr. Hare may have mishandled or discarded
evidence during the period when he was charged with supervising
the evidence room. Mr. Hare argues that such evidence is
irrelevant and more prejudicial than probative. Not so. Mr.
Hare alleges that Chief Zitek harassed him and treated him badly
in retaliation for his whistle-blowing activities and his
decision to engage in constitutionally protected speech about
corruption in the police department and in the Village. The
defendants contend that, to the extent Chief Zitek treated Mr.
Hare badly, it was because he didn't like him and didn't like the
way he did his job. Evidence that Mr. Hare botched his job as
supervisor of the evidence room, if it exists, would be directly
relevant to the defendants' theory of the case, and Mr. Hare has
not persuaded the Court that there is any legitimate reason to
keep it out. Mr. Hare cannot expect the Court to allow him to
present his case in full and then to hamstring the defendants

from offering evidence in rebuttal, simply because he doesn't like the way the evidence makes him look. Mr. Hare's counsel can explore on cross-examination the evidence relating to Mr. Hare's performance with regard to the evidence room, and it will be up to the jury to determine who is telling the truth about the reasons for the harassment and mistreatment. Mr. Hare's seventh motion *in limine* is denied.

B.    Defendants' Motion *In Limine*

The defendants filed 27 motions *in limine*. As to several of the motions - (1) defendants' motion *in limine* to bar evidence of e-mails between Mr. Hare and Karyn Stratton; (2) defendants' motion *in limine* to bar evidence and testimony relating to Mr. Hare's pension reduction; (3) defendants' motion *in limine* to bar evidence of settlement negotiations; (4) defendants' motion *in limine* to exclude evidence of insurance coverage; (5) defendants' motion *in limine* to bar evidence of Mr. Hare's notes of Chief Zitek's alleged wrongdoing; and (6) defendants' motion *in limine* to exclude suggestions of individual defendants' indemnification - Mr. Hare raises no objection, and the Court will, therefore, grant them.

Similarly, with regard to one other motion - defendants' motion to bar evidence not disclosed during discovery - Mr. Hare opposes the motion only in part. In their motion, the defendants specifically seek to exclude testimony and evidence relating to

11

Mr. Warschol, a witness Mr. Hare unsuccessfully sought to depose after discovery had closed. Mr. Hare has indicated that he does not oppose the motion to bar this evidence, and the Court therefore grants the motion to this extent. Mr. Hare objects, however, to a blanket prohibition on issues and evidence that may not have been raised in discovery. The Court agrees that such a ban is inappropriate until such time as the Court can determine what the evidence is; the Court, therefore, will reserve for trial any further ruling on undisclosed evidence.

Turning to the contested motions, the defendants first move to bar evidence that the Village of Stickney "blackballed" Mr. Hare, that is, that the Village attempted to prevent Mr. Hare from obtaining new employment. The defendants argue that such evidence is irrelevant to the question of whether Mr. Hare made reasonable efforts to mitigate his damages and that the prejudicial nature of such evidence would outweigh its probative value. In particular, the defendants argue, the only issue relevant on the mitigation issue is what efforts Mr. Hare made to get a job; they argue that whether he actually got the job in the end, and, if not, why, are not relevant on mitigation. As the Court sees it however, the question of mitigation would include whether Mr. Hare obtained other employment and, if not, why. Did he simply choose not to accept other job offers? Or were there no other job offers to accept? And, if not, did the defendants

have something to do with that? To decide whether Mr. Hare is entitled to back pay damages, the jury should be permitted to consider the entire picture on this issue, and the Court will, therefore, deny the defendants' first motion *in limine.*

In separate motions, the defendants seek to bar evidence and testimony relating to Don Kreger and Robert Rivkin, both partners at Schiff Hardin, the law firm that, until last month, served as corporation counsel for the Village of Stickney. The defendants argue that such evidence is privileged, given the attorney-client relationship. It is certainly likely that the attorney-client privilege may come into play if Mr. Kreger and/or Mr. Rivkin testifies at trial. And, to the extent evidence and testimony is covered by the privilege, the Court will sustain proper objections. But the mere fact that Mr. Kreger and Mr. Rivkin represented the Village for a time does not mean that every piece of evidence relating to them will automatically be kept out on privilege grounds. For now, the Court declines to issue the blanket ban defendants seek; the motions *in limine* regarding Mr. Kreger and Mr. Rivkin are denied.

The defendants next seek to bar evidence and testimony relating to the Stickney Police Pension Board Hearing. The defendants contend that, because Mr. Hare was ultimately awarded a duty-disability pension, he suffered no adverse action and therefore should not be able to introduce evidence to press the

point. But, Mr. Hare argues, he suffered an adverse action despite the pension because he had to expend time and money to fight the Village's attempts to prevent his pension from being awarded and to thwart the Village's attempts to overturn the pension decision. The Court agrees. The defendants have attempted to define "adverse harm" too narrowly here; Mr. Hare alleges that the Village's conduct in connection with the pension proceedings amounted to an adverse action in retaliation for his constitutionally-protected speech, and he is entitled to bear those allegations out at trial. The motion to bar evidence relating to the pension hearings is denied.

Defendants next seek to bar evidence and testimony relating to the evidence room. As explained in previous opinions, when he was made Commander, Mr. Hare was put in charge of the evidence room; in that capacity, he audited the room and noted various problems and discrepancies. Mr. Hare alleges that, when he tried to tell Chief Zitek about the problems and tried to get Chief Zitek to let him take corrective measures, Chief Zitek was dismissive and, basically, told him to drop the issue. The defendants argue that, under *Garcetti*, Mr. Hare cannot rely on his "speech" about the evidence room to establish a constitutional violation. On this narrow issue, the Court agrees that *Garcetti* really does make a difference. The "speech" about the evidence locker would not be protected under *Garcetti* as it

14

was unquestionably made in the course of Mr. Hare carrying out his job duties. The Court will grant defendants' motion *in limine* and bar Mr. Hare from arguing at trial that Chief Zitek retaliated against him because of his findings with regard to the evidence room. Testimony and evidence on this issue may still be offered, however, to give context to the relationship between Mr. Hare and Chief Zitek.

In their next two motions, the defendants seek to bar evidence relating to the grand jury investigation into the alleged corruption in Chief Zitek's police department and evidence of grand jury testimony. The defendants understandably want to keep this evidence out – it makes Chief Zitek, and the Village, look bad. But this evidence goes to the heart of Mr. Hare's retaliation claim, and the Court is not persuaded that whatever prejudice the defendants may suffer because of its introduction outweighs the probative value of the evidence. Mr. Hare did not work for the State's Attorney's Office; he was not an employee speaking out on corruption as part of his job description. And *Garcetti* therefore does not apply. The motion to bar evidence of the grand jury investigation and the motion to bar evidence of grand jury testimony are denied.

In their next two motions *in limine*, the defendants seek to bar evidence and testimony of Jeff Walik and Joe Kretch, two of the Stickney police officers who joined Mr. Hare when he blew the

15

whistle on the alleged corruption in Chief Zitek's department. Just as the Court rejected the notion that Mr. Hare was an employee of the State's Attorney's Office, so to it rejects the notion that Officers Walik and Kretch were employees of the State's Attorney's Officer. The Court denies defendants' motions *in limine* with regard to these witnesses.

Next, the defendants seek to bar evidence and testimony of Officer Mark Kozelka, who worked under Mr. Hare at the Stickney Police Department and apparently claims that his work shift was changed because he signed another party's election petition. In a separate motion, the defendants seek to bar evidence and testimony of Tom Kadolph, who worked for the Stickney Fire Department until he was fired, and Carroll Kadolph, Tom's mother, who just happened to sit on the pension board that awarded Mr. Hare his duty-related disability; Ms. Kadolph apparently believes that her son was fired because she voted in favor of the pension award. Mr. Hare does not oppose the motion to bar Tom Kadolph; he does, however, object to the defendants' efforts to bar evidence and testimony from the other two individuals. Based on the limited arguments before the Court, it is not clear that either of these people were whistleblowers; thus, it is not clear that they could add anything of relevance to Mr. Hare's claim that the Village had a policy of retaliating against whistleblowers. At this point, the Court agrees with the

defendants that whatever evidence and testimony Mr. Kozelka and Ms. Kadolph could offer would be largely irrelevant and relatively prejudicial. If it turns out that these witnesses could actually offer testimony or evidence that would support Mr. Hare's custom or policy claim against the Village - his claim that the Village had a custom or policy of retaliating against whistleblowers - the Court may reconsider the issue. For now, however, the Court will grant the defendants' motions to bar these witnesses from testifying at trial.

Next, the defendants seek to bar evidence of the Village's alleged failure to provide Mr. Hare with legal representation in connection with the grand jury proceedings dealing with the alleged corruption in the Village and in the police department. The defendants argue that such evidence should be barred because Mr. Hare never asked for an attorney. Although this may prove to be a valid defense to Mr. Hare's retaliation claim, it is not sufficient justification for barring evidence *in limine.* Mr. Hare has alleged that, in retaliation for his whistle-blowing, the Village provided an attorney to represent everyone who was summoned to appear before the grand jury except him; it will be up to the jury to decide whether he has met his burden with regard to this aspect of his retaliation claim. Defendants' motion *in limine* is denied.

The defendants next move to bar the testimony of Susan

Locander, a free-lance reporter for Liberty Suburban Newspapers who wrote a series of articles on the alleged corruption and wrongdoing in Stickney and in the Stickney Police Department; they also seek to bar evidence relating to the articles themselves. The defendants argue that this evidence is unnecessary, given that they have stipulated that Mr. Hare was a "whistle-blower." The Court disagrees; the stipulation does not bar Mr. Hare from getting into the specifics of his whistle-blowing; indeed, the facts relating to his whistle-blowing will likely lie at the heart of the jury's consideration of the retaliation claims. The defendants also argue that the articles should be kept out because they are hearsay. If, at trial, the evidence is offered in a manner that would violate the hearsay rule – which admittedly seems likely – the Court will sustain a proper objection. The Court will not bar the evidence, however, until it is able to determine definitively that it would, in fact, constitute inadmissible hearsay.

The defendants next seek to bar evidence of Chief Zitek's alleged money-skimming activities. The defendants argue that, because they have stipulated that Mr. Hare was a whistle-blower, evidence of the alleged wrongdoing is unnecessary. The Court has already addressed this argument: the stipulation does not make the allegations of wrongdoing irrelevant; they are nonetheless necessary to give the jury the full picture of what Mr. Hare

alleges was going on in Chief Zitek's department when the
harassment and retaliation is alleged to have occurred.

In their next motion *in limine*, the defendants seek to bar
evidence relating to Officer Joe Page. Officer Page worked for
the Village of Stickney as a reserve officer; he was fired in
2001, and Mr. Hare apparently intends to have him testify at
trial in support of his claim that the Village had a policy or
custom of retaliating against employees who blew the whistle on
corruption. To the extent this is the case, the evidence would
be relevant to Mr. Hare's municipal liability claim; as the Court
said in its summary judgment ruling, Mr. Hare may prove the
existence of the alleged policy or custom through a series of
violations establishing a widespread practice. *See Hare v.
Zitek*, 414 F.Supp. 2d 834, 860-61 (N.D. Ill. 2005). Defendants'
motion to bar Officer Page from testifying is denied.

Defendants next seek to bar evidence and testimony relating
to panic attacks allegedly suffered by Mr. Hare. The motion is
denied. If Mr. Hare is claiming that the alleged harassment and
retaliation caused him to suffer panic attacks, and if the
defendants have evidence suggesting that the attacks began long
before the events alleged in this case, then that evidence may be
used to impeach Mr. Hare on his claim.

Defendants next seek to bar the testimony of Karyn Stratton;
they argue that Ms. Stratton, who would testify about the grand

19

jury investigation, should be barred from testifying because:
under *Garcetti*, Mr. Hare's speech in connection with this matter
was not constitutionally protected; it is unnecessary to rehash
the particulars of the grand jury investigation; and given that
the defendants have stipulated that Mr. Hare was a whistle-
blower, the testimony is irrelevant to his claims.  For reasons
already discussed above, the Court rejects these arguments and
denies the motion.

Next, the defendants move to bar evidence of comparisons to
unsimilarly situated individuals – in particular, those who were
not fired or who held different jobs than Mr. Hare.  Mr. Hare has
alleged that the Village had a custom or policy of retaliating
against whistleblowers, and the Court has already ruled that he
may prove that claim through evidence establishing a series of
violations.  The Court is not persuaded that the violations must
involve the exact same acts of retaliation as those alleged to
have been visited upon Mr. Hare, and will, accordingly, deny the
defendants' motion.  The Court cautions Mr. Hare, however, that
the leeway granted him on this issue is not unlimited; any parade
of violations must indeed involve retaliation by the Village
against whistleblowers.

In their last two motions *in limine*, the defendants seek to
exclude "hearsay statements not directed toward [Mr. Hare" and
"evidence of rumors."  Generally speaking, the Court intends to

exclude all hearsay statements, unless they fall within one of
the recognized exceptions; it intends to exclude evidence that is
irrelevant; and it intends to exclude evidence for which the
probative value is substantially outweighed by the danger of
unfair prejudice. These are just some of the directives of the
Federal Rules of Evidence. Particular objections will be
addressed at trial; the motions, which are unclear to the point
of seeming absurd, are denied.

## Conclusion

For the reasons explained above, the Court grants, as
unopposed, Defendants' Motion *in Limine* to Bar Evidence of E-
mails Between Karyn Stratton and Plaintiff [#133]; Defendants'
Motion *in Limine* to Bar Evidence and Testimony Relating to
Plaintiff's Pension Reduction [#138]; Defendants' Motion *in
Limine* to Bar Evidence of Plaintiff's Notes of Chief Zitek's
Alleged Wrongdoing [#147]; Defendants' Motion *in Limine* to Bar
Evidence of Settlement Negotiations [#150]; Defendants' Motion *in
Limine* to Exclude Evidence of Insurance Coverage [#153]; and
Defendants' Motion *in Limine* to Exclude Suggestions of Individual
Defendants' Indemnification [#154].

The Court similarly grants in part Defendants' Motion *in
Limine* to Bar Evidence Not Disclosed During Discovery [#134]; the
Court grants the motion with regard to testimony and evidence
relating to Mr. Warschol, but otherwise reserves ruling.

The Court grants, over objection, Mr. Hare's First, Third and Fourth Motions *in Limine*.[2] The Court also grants, over objection, Defendants' Motion *in Limine* to bar Evidence and Testimony of Officer Mark Kozelka [#144]; and Defendants' Motion *in Limine* to Bar Evidence and Testimony of Tom Kadolph and Carroll Kadolph [#157]. And the Court grants in part Defendants' Motion *in Limine* to Bar Evidence and Testimony Relating to the Evidence Room [#139]; Mr. Hare may not argue at trial that Chief Zitek retaliated against him because of his findings with regard to the evidence room, but testimony and evidence on this issue may be offered to give context to the relationship between Mr. Hare and Chief Zitek.

The Court denies Mr. Hare's Second, Fifth, Sixth and Seventh Motions *in Limine*. The Court also denies Defendants' Motion *in Limine* to Bar Evidence of "Blackballing" [#130]; Defendants' Motion *in Limine* to Bar Evidence and Testimony Relating to Don Kreger [#131]; Defendants' Motion *in Limine* to Bar Evidence and Testimony Relating to Robert Rivkin [#132]; Defendants' Motion *in Limine* to Bar Evidence and Testimony Relating to the Stickney Police Pension Board Hearing [#137]; Defendants' Motion *in Limine*

---

[2]Mr. Hare's Motions in Limine were not separately docketed with the Court; rather, they are all included in the docket entry for the Proposed Pre-Trial Order, docket #135. It is the Court's understanding that the docketing department was planning to work with plaintiff's counsel to correct this problem, but, at the time this Opinion was issued, the motions were not yet separately docketed.

to Bar Evidence of Grand Jury Investigation [#140]; Defendants'
Motion *in Limine* to Bar Evidence of Grand Jury Testimony [#141];
Defendants' Motion *in Limine* to Bar Evidence and Testimony of
Jeff Walik [#142]; Defendants' Motion *in Limine* to Bar Evidence
and Testimony of Joe Kretch [#143]; Defendants' Motion *in Limine*
to Bar Evidence of Alleged Failure to Provide Legal
Representation [#145]; Defendants' Motion *in Limine* to Bar Susan
Locander Testimony and Newspaper Articles [#146]; Defendants'
Motion *in Limine* to Bar Evidence and Testimony of Officer Joe
Page [#148]; Defendants' Motion *in Limine* to Bar Evidence and
Testimony of Plaintiff's Panic Attacks [#149]; Defendants' Motion
*in Limine* to Bar the Testimony of Karyn Stratton [#151];
Defendants' Motion *in Limine* to bar Evidence of Comparisons to
Unsimilarly Situated Individuals [#152]; Defendants' Motion *in*
*Limine* to Exclude Hearsay Statements Not Directed Toward
Plaintiff [#155]; Defendants' Motion *in Limine* to Exclude
Evidence of Rumors [#156]; and Defendants' Motion *in Limine* to
Bar Evidence of Chief Zitek's Alleged Money Skimming [#158].

Date: July 24, 2006

ENTER:

ARLANDER KEYS
United States Magistrate Judge

23